Good morning, Your Honors. My name is Lori Teicher, and I'm appearing on behalf of Petitioner Appellant Mr. Peter Elvik in this matter. I will attempt to reserve two minutes for rebuttal. If the District Court's holding in this case regarding equitable tolling is the rule, then every petitioner who has counsel and who has a petition or an appeal pending in a state court has a duty to call or write the clerk's office because they must assume that their attorney is misrepresenting or lying to them as to whether or not that appeal has been decided. This is not a case where simply the only attorney error alleged is for failing to notify Mr. Elvik of the filing of the Nevada Supreme Court's order in this case. Here, counsel misrepresented on a number of occasions the status of his case and told him his case was still pending when in fact it was not. This conduct went on for about a year and five months after remitted or actually had been issued in the Nevada Supreme Court. What happened here was counsel argued in front of the Nevada Supreme Court, attended oral argument, presented the case. Mr. Elvik's family was informed, and he as well, were informed that it could take the Nevada Supreme Court up to a year to render an opinion. It's a general estimate in these in these types of matters. What actually happened was that the Nevada Supreme Court, uncharacteristically, issued a written opinion in about three weeks. But what happened after that was on three separate occasions, members of Mr. Elvik's family contacted the attorney's office that had handled his post-conviction appeal to the Nevada Supreme Court, and he was told on three, they were told on three separate occasions that the decision was still pending when in fact it had, it was not. It had been decided already. Counsel, it's clear that this lawyer was not going to represent him in the federal proceeding. Is that correct? That's correct. Does that make a difference? No. No, that doesn't make a difference because this lawyer was his lawyer and had argued this case in front of the Nevada Supreme Court, and it was the lawyer that would get the opinion, quite frankly. Mr. Elvik's not going to receive a copy of the opinion in the Nevada, in Ely State Prison, where he was residing. The only attorney that's going to get a copy of this is Counsel of Record that had argued the case. That was Mr. Michelides in this instance. The other extenuating circumstance in this case was that, unbeknownst to Mr. Elvik, or his family, this attorney was having serious prescription drug addiction problems, which became a matter of public record, and during the time that he was informing Mr. Elvik's family that an opinion had not been rendered when in fact it had, he was undergoing serious problems with this. So bad, in fact, that he ended up, his bar license went to an inactive status, and he was not practicing law and in treatment. What steps did Mr. Elvik take, given that the attorney you've just been describing was not going to represent him in the filing of the Federal Habeas Petition, what steps did your client take to find counsel to do that? Well, he found counsel as soon as he found out that that decision had been made, and had been made a year and five months late. Stated another way, was there anything to prevent him from obtaining counsel for the purpose of filing a Federal Habeas Petition at any time after the Nevada Supreme Court case was over? Certainly not, but that's not the rule. He's not, he doesn't have to do that, and he did that as soon as he found out that the Nevada Supreme Court had rendered an opinion, albeit he found out a year and five months after remitted or had issued. He acted diligently. That's the thing here. We have the two combinations which should equal equitable tolling in this case. Could he have filed his habeas without knowing? Well, he could have. However, I don't know that that habeas would have been. It would be a placeholder. We don't. Do you regularly do habeas work? Yes. Then you know that notwithstanding what was going on in the Nevada court, he could have filed the habeas petition in Federal court and asked for a stay or to be dismissed without prejudice if indeed the Nevada Supreme Court hadn't acted, correct? He could have, but he doesn't have to. He clearly doesn't have to under the law. He has some diligence requirements, doesn't he? Yes, he does. Could he have waited three years? Under my theory, well, yes. If his attorney was material misrepresenting to him and the conduct was so egregious, which it was here, we don't have three years, number one. We have a year and five months, which generally is not an outrageous amount of time for an appeal to be pending in front of a Nevada Supreme Court. So we have diligence in terms of throughout that amount of time, his family was and they were requesting information and were given the wrong information that his appeal had not been pending. As soon as the last call to the lawyer and when your client found out that the court had acted? About three months. Can I take it from your description, if he had filed the next day, it would have been on time? No, it wouldn't have. He had 69 days left at that point. But when he found out, if he had immediately contacted a lawyer. Which is what he did. And immediately filed, it would have been timely. If his lawyer had been able to file at that time immediately, what happened again was you have to remember that this law firm was in chaos. This law firm was in chaos, which unbeknownst to Mr. Elvick, it was a shambles. What he did know was that that firm, whatever its status was, they weren't going to be his lawyers for the purpose of the federal habeas. That's true. Correct? That's true. What did he do when he found out finally and late in the game that the Nevada Supreme Court had acted when he had 69 days left to finally file a federal habeas petition? What did he do? He immediately hired a lawyer. What did that lawyer do? That lawyer met with him and immediately tried to get the record. And that's what we have here. We have a time period of approximately 100, let's see, well, within those 69 days. I'm sorry, it was about 130 days. What happened was he hired a lawyer, his lawyer immediately tried to track down that file because, again, the lawyer that had argued the case on appeal was the only one that had that post-conviction, all the post-conviction pleadings and everything that happened in the post-conviction period of time. That was very difficult to do. He eventually realized actually very quickly within a month that he was not going to get it from this lawyer because the lawyer's partner had retired, this lawyer was having these personal problems, addiction issues, he wasn't going to get the file from there. So along the same period of time, while he was trying to actively get the file from them, within the same month he was going to the first judicial district, traveling from Reno to Carson on three separate occasions and asking the clerk for the record, can I have the briefing, can I have the briefing from the post-conviction hearings. There was a post-conviction evidentiary hearing. Can I have the briefing from that. They were told that there was a back, he was told on three separate occasions, there's a backlog, there's a backlog, there's a backlog. We'll get it to you as soon as we can. At the same time, he'd also ordered and done what every habeas lawyer would do. He'd gone to the Nevada Supreme Court and asked them for their pleadings. They turned around the pleadings for him so that he could actually do something with the post-conviction proceedings that had happened below. He subsequently, I've got to believe, had been working on the direct appeal issues because he was able to get the direct appeal briefing from that lawyer that had handled those proceedings. We're talking about two different lawyers here. So he was working on that diligently while he was trying very, very quickly, knowing that Mr. Elvick had time issues, to get his hands on those state post-conviction pleadings. When he got those. I'll finish the sentence and then I'll save my minute. When he got those, he turned around that petition in 29 days. What we have here are extraordinary circumstances and reasonable diligence to allow Mr. Elvick to be granted equitable tolling. And I'll reserve my 53 seconds. Thank you. You've got about a minute. Okay. Fair for the State at this time. Ms. Crow? May it please the Court. My name is Amy Crow and I'm a Deputy Attorney General with the Nevada Attorney General's Office here on behalf of the respondents in this case. The issue in this case is whether the district court erred in determining that Mr. Elvick was not entitled for equitable tolling from December 3, 2002, when the remitted or issued an estate habeas case, August 30, 2004, when he signed and submitted his federal habeas petition, during which 635 days elapsed. Now, Counsel, this is a very terrible case. We've got a lawyer who was completely incompetent that this individual had a right to rely on. And it appears to me that there was diligence. And as the federal district court noted in this case, there's no indication that Mr. Elvick took any action whatsoever in those 635 days. The test requires that Mr. Elvick, the petitioner, not his mother, not his direct appeal counsel, not his once-to-be-believed grandfather, act diligently. There's no indication in the affidavit submitted by Mr. Elvick that he took any action prior to August 30, 2004, to sign his federal habeas petition. Was it unreasonable for him to rely upon the lawyer that had argued his case in the Nevada courts? There's no indication. Was it hard for the guess to know? Not in this circumstance. Was it unreasonable for Elvick to rely upon the lawyer who had argued his case in front of the Nevada Supreme Court to tell him what that court had ruled? That was unreasonable. Given that there was indication. Was it hard for the guess to know again? I do not believe in this case that it was reasonable, given the difficulties they were having locating the attorney. Moreover, the first two times that it was represented to family members that the appeal was still pending, it was not Mr. Michaelides they spoke to. It was someone acting as a paralegal, someone who had been disbarred by the California State Bar working under Mr. Michaelides. And according to appellant's opening brief, during that time that Mr. Spies, the paralegal, imparted this information, he was not even working for Mr. Michaelides at the time. Did Mr. Elvick know that his counsel had been disbarred? It was not his counsel who had been disbarred. It was the paralegal acting who was speaking from the California State Bar. He was acting as a paralegal in Nevada. How would the Petitioner know that he had been disbarred? It was actually his direct appeal counsel who referred Mr. Elvick to Mr. Michaelides because he knew this Mr. Spies, the paralegal. So presumably he would have had that information. Well, how would he have gotten that information? Well, in this indication, in this case, there's no indication that Mr. Elvick obtained any information. If you look at the affidavits, it says, you know, the mother spoke to Mr. Michaelides, the mother spoke to Mr. or the direct appeal counsel spoke to Mr. Spies, but there's no indication that anyone spoke to Mr. Elvick and told Mr. Elvick. What would have happened if Mr. Elvick had written a letter to the court? A letter to the court? He would have received notice that... Are you sure? I can tell you what would happen here if he wrote a letter and the record indicated that he had counsel. He'd get a letter back from us saying you have a lawyer. Ask your lawyer. It is my understanding that he would have received a letter back indicating that remitted or had issued in that case, because that's a public file and anybody could request information regarding a public file. Moreover, Mr. Elvick can't show that he was diligent once he discovered on April 15, 2004, that the Nevada Supreme Court had entered an order in his state post-conviction petition. Do you agree with the Postal Council that he had about, what's it, 130 days? Is that the figure? He, there was 136 days that passed. That's the state's calculation, 136? 136, that passed between when he found out and when he filed his Federal habeas petition. Mr. Elvick does not challenge that 295 days had already untold lapse between December 1, 1998 and September 23, 1990. What would have been the response of your office had Mr. Elvick's habeas counsel filed a habeas petition within two or three days of learning of the remitted action by the Nevada Supreme Court and said, I think my client's got a habeas claim. I have had no access to the records. I can't get the records from the court, but I'm filing this anyway. What would have been your office's response? We would have filed a motion to dismiss, and the equitable tolling issue would have been argued below. And he probably would have received equitable tolling. But here, April 15, 2004, let's say the clock starts ticking again. He had 70 days. He waited 60 days before anyone retained counsel, and it wasn't even Mr. Elvick who retained counsel. It was his grandfather who retained counsel. You know, we talk about these relatives doing these things, but when an individual is in prison, it's very difficult for them to do it themselves. And I applaud family help. Certainly. But in this case, anyone, including Mr. Elvick, who at this point was in his earliest 20s, could have written to the court and said, please give me my files. Get a bare-bones federal habeas petition going. He waited 60 days before he even retained counsel, and about 84 days before he even wrote to the Nevada Supreme Court and said, please give me the files. You know, since 295 days had already elapsed untold, he had 70 days to file a federal habeas petition, and that was already untimely if equitable tolling stops at April 15th. So, you know, he was not diligent. Yet there is an affidavit stating that his mother and his direct appeal counsel went and spoke to Mr. Cornell about writing a ghost or ghostwriting a petition. He does not need someone to ghostwrite the petition. And that, and he was, Mr. Cornell was not even retained to ghostwrite the petition until July or June 14th, some 60 days after he found out. If he was diligent, he would have immediately started working on that habeas petition. You speak of 600-some days. Are we really, how many days are we really talking about that he should have been doing something? There are two possible dates. I submit for this total 635 days he was not diligent, because there's no indication that he was. What the judge is asking is about the period after he in fact found out. Okay, after he in fact found out, 136 days elapsed. He already had 295 days untold. So if equitable tolling was to be, to go until April 15th, 2004, he had 70 days, or until June 23rd, 2004, to file his federal habeas petition. He did not file it until August 30th, 2004. And he did not even retain counsel to ghostwrite it until June 14th, 2004. Sounds like your argument is that even if we assume that everything, every day, every minute, prior to the time he received actual notice, as told, he still had ample time to retain counsel and file.  He certainly still had time to file. He certainly did not need to retain counsel. These are meant to be pro se, and he certainly could have. Accordingly, I submit that he was not diligent for the total 635 days. However, even taking as true every fact as stated by Mr. Elvick. Are you now repeating the argument that I just asked you to make?  I am attempting to sum up. Okay. I think I understand the argument. All right. Thank you. Mr. Elvick shouldn't be penalized because he didn't second-guess his attorney's misrepresentations. A client should be able to assume that his attorney is not lying to him or misrepresenting the facts as to whether or not a decision has been rendered in his case. This can't be the rule. Mr. Elvick was 14 when he was arrested. He was tried and is in a detention facility. As an adult, he was sent to Ely State Prison. Judge Hugg, I know that you're well aware that that's Nevada's highest level of maximum security prison at age 15. He received a sentence which translates into him serving 48 years before he'll ever appear before a pardons board. Thankfully, he did have a family that was helping him with this litigation. How long did he wait to contact Ken? How long expired between the time he actually knew the Nevada Supreme Court had ruled and when the first contact with any kind of lawyer was made? My understanding, based upon the affidavits that we have, we were not given a hearing regarding tolling in this case. And I would urge you that you look at the affidavits within the EOR between 1982 and 1996 as well as EOR 427. My understanding is that in less than about a month and a half, Mr. Elvick's mother and his direct appeal counsel from California were able to travel to northern Nevada to retain counsel to write the federal petition as well as secure and retain, meet, translate, give documents, whatever direct appeal documents that they had, as well as meet with Mr. Elvick. So at that point, he had about 90 days. Yes. And, again, I've got to believe that due diligence has been done here when you have a counsel, when you have counsel that basically tried to move heaven and earth and tried to get a hold of the records from the post-conviction lawyer, get a hold of the records from the court, move it as quickly as he could, contact the court at least on three separate occasions, get the records rolling from the Nevada Supreme Court, and turn around a petition within 28 days that was able to include all of his post-conviction issues. That's got to be due diligence, and we have extraordinary circumstances here that merit tolling. Okay. Thank you. Thank you both for your arguments. Thanks for coming in today. The case just argued will be submitted for decision.
judges: Hug, Fletcher B. , Hawkins